IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS


BRIAN MUNIZ,                              )

                               )

                Plaintiff,            )

                               ) CIVIL ACTION

vs.                              )

                               ) Case No. 1:26-CV-06865

MILLION WAYS SERIES, LLC,       )

                               )

                Defendant.       )

## COMPLAINT

COMES NOW, BRIAN MUNIZ, by and through the undersigned counsel, and files this, his Complaint against Defendant, MILLION WAYS SERIES, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, BRIAN MUNIZ (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Harvard, Illinois (McHenry County).

3. Plaintiff is disabled as defined by the ADA.

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

1

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, MILLION WAYS SERIES, LLC (hereinafter "MILLION WAYS SERIES, LLC"), is a domestic limited liability company that transacts business in the State of Illinois and within this judicial district.

8.      Defendant, MILLION WAYS SERIES, LLC, may be properly served with process for service via its Registered Agent, to wit: c/o Thomas Alore, Registered Agent, 1730 Park St., Suite 120, Naperville, IL 60653.

## FACTUAL ALLEGATIONS

9.      On or about April 26, 2026, Plaintiff was a customer at "Cubano Bros" a business located at 610 E Irving Park Rd, Roselle, IL, 60172 referenced herein as "Cubano Bros".  Attached is a receipt documenting Plaintiff's purchase.  See Exhibit 1.  Also attached is a photograph documenting Plaintiff's visit to the Property. See Exhibit 2.

10.      Since his April 26, 2026,visit, Plaintiff again travelled to the Property to be a return

2

customer of Cubano Bros, but was unable to find an available accessible parking space and was deterred from patronizing the restaurant again.

11.     Plaintiff is an Uber Driver and is commonly driving around the entire Chicago area. Although Plaintiff resides in McHenry County, Plaintiff is often picking up and dropping off passengers around O'Hare International Airport on a daily basis and delivers passengers throughout all Chicago.

12.     Defendant, MILLION WAYS SERIES, LLC, is the owner or co-owner of the real property and improvements that Cubano Bros is situated upon and is the subject of this action located at 610 E Irving Park Rd, Roselle, IL  60172

13.     Plaintiff's access to the business(es) located 610 E Irving Park Rd, Roselle, IL 60172, DuPage County Property Appraiser's property tax key number: 0202317002 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, MILLION WAYS SERIES, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14.     Plaintiff has visited the Property twice before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property definitely within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer of Cubano Bros, to determine if and when the Property is made accessible and for Advocacy Purposes.

15.     Plaintiff intends on revisiting the Property to purchase food and/or services as a return customer routinely working and driving in near vicinity as well as for Advocacy Purposes

3

but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until after the barriers to access are removed.

16. Plaintiff travelled to the Property twice before as a customer and as an independent advocate for the disabled, personally encountered the barriers to access the Property that are detailed in this Complaint, engaged these barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

17. Plaintiff encountered and became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, as such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

18. Plaintiff's inability to fully access the public accommodation within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an inquiry in fact.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

19. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

20. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24. The Property is a public accommodation and service establishment.

25. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

26. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

27. The Property must be, but is not, in compliance with the ADA and ADAAG.

28. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29. Plaintiff intends to visit the Property in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities,

privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30. Defendant, MILLION WAYS SERIES, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31. Defendant, MILLION WAYS SERIES, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, MILLION WAYS SERIES, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS**

(i) Near Unit 610, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This

barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(ii)     Near Unit 610, the accessible ramp has a vertical rise that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

(iii)    Across the vehicular way from Unit 620, the bottom edge of the sign identifying the accessible parking space is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(iv)     Across the vehicular way from Unit 620, due to the lack of a nearby accessible ramp, the Property lacks an accessible route from the accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(v)      At Unit 628, there is a doorway threshold with a vertical rise in excess of ½ (one half) inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior

8

of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter.  Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

(vi)     At Unit 630, there is a doorway threshold with a vertical rise in excess of ½ (one half) inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter.  Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

(vii)    At Unit 654, there is a doorway threshold with a vertical rise of approximately 1½ inches and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter.  Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

(viii)     At Unit 654, due to a doorway threshold with a vertical rise of approximately 1½ inches, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

(ix)     At Unit 654, due to a doorway threshold with a vertical rise of approximately 1½ inches, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

(x)     At Unit 654, due to a doorway threshold with a vertical rise of approximately 1½ inches, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

(xi) There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

(xii) As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance. This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

(xiii) In the corner nearest Park Rose Animal Hospital, the accessible parking space is not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(xiv) In the corner nearest Park Rose Animal Hospital, the bottom edge of the sign identifying the accessible parking space is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier

11

to access would make it difficult for Plaintiff to locate an accessible parking space.

(xv) There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

(xvi) The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There are 103 total parking spaces at the Property, which require a minimum of five accessible parking spaces, but there are only three accessible parking spaces. This barrier to access made it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

(xvii) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

33. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36. All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA as the modifications necessary to cure the barriers to access identified in paragraph 32 of this Complaint are listed in 28 C.F.R. § 36.304 as "readily achievable".

37. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

38. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, MILLION WAYS SERIES, LLC, has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $3,162,108.00

39. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

40. Upon information and good faith belief, the Property has been altered since 2010.

41. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

42. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, MILLION WAYS SERIES, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

43. Plaintiff's requested relief serves the public interest.

44.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, MILLION WAYS SERIES, LLC.

45.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, MILLION WAYS SERIES, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

46.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, MILLION WAYS SERIES, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, MILLION WAYS SERIES, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, MILLION WAYS SERIES, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, MILLION WAYS SERIES, LLC, to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

15

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: June 10, 2026                    Respectfully submitted,

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. UNKNOWN
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com